UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD A. BRISTOW, for
himself and a class of
others similarly situated,

        NO. CIV. S-06-1947 LKK/GGH

    Plaintiff,

  v.

LYCOMING ENGINES, a         **O R D E R**
Division of Avco Corporation;
AVCO CORPORATION; TEXTRON,
INC.,

    Defendants.
_____/

Plaintiff Richard Bristow brings suit against defendants Lycoming Engines, AVCO Corporation, and Textron, Inc. for injuries associated with an allegedly faulty airplane crankshaft. Pending before the court are defendants' motion to transfer and motion to dismiss. The court resolves the matter on the parties' papers and after oral argument. For the reasons set forth below, the court denies the motion to transfer, and grants in part and denies in part the motion to dismiss, with leave to amend.

////

1

# I. Facts

## A. General Background

In this putative class action, plaintiff seeks to recover costs associated with the replacement of an allegedly faulty airplane crankshaft on behalf of himself and other similarly situated California consumers. The defendants in this action are Lycoming Engines, AVCO Corporation, Textron, Inc. Lycoming, an operating division within AVCO, is alleged to manufacture the crankshaft. Textron is the parent corporation of AVCO. Plaintiff has brought claims based upon California's Unfair Competition Law ("UCL"), Cal. Civ. Code § 17200, and California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750.

A crankshaft is the part of the airplane engine that translates the piston motion into rotation and turns the propeller. When crankshafts fail, power loss, engine failure, and damage to the airplane result. First Amended Compl. ("FAC") ¶ 2. An engine overhaul is required after a specific amount of time. During an overhaul, the crankcase is separated and specified parts are inspected or replaced. FAC ¶ 3. Unlike other parts of the engine, a crankshaft is typically not replaced, and can last the life of the plane with regular maintenance. FAC ¶ 3.

In 2006, Lycoming issued Mandatory Service Bulletin 569 and 569A (collectively, "MSB 569A"), which instituted an "early retirement" program for certain Lycoming crankshafts. Under the program, Lycoming directed aircraft owners to replace their crankshafts the next time the crankcase was split or at the next

2

scheduled overhaul, but not later than February 21, 2009. FAC ¶ 4. Later in 2006, the FAA issued a corresponding Airworthiness Directive ("AD"). 71 Fed. Reg. 57412 (September 29, 2006). The AD differs from MSB 569A in that it extends the maximum compliance time from three to twelve years. MSBs are not legally binding on aircraft owners but ADs, as mandatory regulations promulgated by the FAA, are binding on aircraft owners. Crigler v. Cessna Aircraft Co., 830 F.2d 169, 171 (11th Cir. 1987).

If owners decide to replace their crankshafts prior to 2009, and get their engines overhauled at Lycoming, they will not be charged for the cost of a new crankshaft. Freight charges are not covered. If owners opt to have their engines overhauled prior to 2009 at a non-Lycoming facility, they will be charged $2,000 for the crankshaft, which is discounted from the $16,000 retail cost of a new crankshaft. If, however, owners opt have their crankshafts replaced after 2009, they will bear the full $16,000 cost.

**B. Facts Relevant to Motion to Transfer**

Defendants are headquartered in Pennsylvania and at least twenty-three of defendants' sixty some witnesses live in Pennsylvania. A significant portion of defendants' business appears to take place outside Pennsylvania, particularly in Texas, as well as numerous distribution centers throughout the country, including five in California.

Currently before the Eastern District of Pennsylvania is a case, factually similar to this one, involving a class of consumers

3

from other states, excluding California, who purchased engines from defendant with the same crankshaft issue. The case before this court differs in that it is brought on behalf of California residents pursuant to California law.

Previously, defendants requested the Judicial Panel on Multidistrict Litigation ("MDL panel") to transfer the case to Pennsylvania for coordinated pretrial proceedings. The MDL panel denied the transfer, finding that "centralization would not necessarily serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation." Order Denying Transfer, Ex. A to Defs.' Notice Regarding Mot. to Transfer. The MDL panel concluded that: "[N]o overlap exists between the putative classes in the Pennsylvania actions and the California action. The proponents of centralization have failed to persuade us that any common questions of fact and law are sufficiently complex and/or numerous to justify Section 1407 transfer." Id.

## II. Legal Standards & Analysis

**A. Motion to Transfer**

**1. Standard for Transfer Pursuant to 28 U.S.C. § 1404(a)**

Section 1404(a) of Title 28 provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Although the statute was drafted in accordance with the doctrine of forum non conveniens, it was intended to be a revision rather

4

than a codification of the common law. Piper Aircraft v. Reyno, 454 U.S. 235, 253 (1981); Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955).

The burden is upon the moving party, however, to show that transfer is appropriate. Commodity Futures Trading Commission v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). The plaintiff's choice of forum is generally accorded great weight. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to be equally convenient or inconvenient. Van Dusen v. Barrack, 376 U.S. 612, 646 (1964).

Several factors should be considered by the court in resolving a motion brought pursuant to § 1404(a). The common law factors that are still appropriate for consideration include: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Other factors that would not have been relevant under the prior doctrine of forum non conveniens are now appropriate for the court's consideration. These include: "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home

with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Piper Aircraft, 454 U.S. at 241 n.6.

In sum, "[t]he basic factors to be considered then, in determining whether, on balance, a transfer to a different forum would allow a case to proceed more conveniently and better serve the interests of justice, are:  (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; and (4) the interests of justice." Los Angeles Memorial Coliseum Commission v. National Football League, 89 F.R.D. 497, 499 (C.D. Cal. 1981).

**2. Analysis**

Defendants have failed to show that transferring the pending case is appropriate.  Upon consideration of the relevant factors, the motion to transfer should be denied.

**a. Interests of Justice**

As a threshold matter, it is worth noting that the factors for transfer pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1407(a) (the multidistrict litigation statute) are essentially the same. The MDL panel may transfer cases involving one or more common questions of fact to any district for coordinated or consolidated pretrial proceedings where transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).

6

In the case at bar, the MDL panel rejected essentially the same arguments that defendants present in their motion to change venue. Although a motion pursuant to the multidistrict litigation statute is different from a traditional motion to transfer under Section 1404, the MDL panel did specifically consider matters of convenience and efficiency, finding that those interests would not be served by transfer. See Order Denying Transfer, Ex. A to Defs.' Notice Regarding Motion to Transfer. Defendants' motion to transfer is based on the same facts which were before the MDL panel and defendants fail to explain how, if at all, circumstances have changed so as to warrant transfer pursuant to Section 1404(a).

Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993). The doctrine is not a limitation on a court's power, but rather a guide to discretion. Arizona v. California, 460 U.S. 605, 618 (1983). Although the motion to transfer under the multidistrict litigation statute and the pending motion to transfer are not identical, the law of the case doctrine suggests that this court should refrain from reconsidering the very issues considered and rejected by the MDL panel. The court is inclined to deny the motion to transfer on these grounds alone.

Even if the court were to disregard the finding of the MDL panel, other factors weigh in favor of keeping the case in this district. First, the Pennsylvania case is apparently at a later

pretrial stage than this one. Decl. of Erica Craven ("Craven Decl."), Ex. B. There is no indication that transferring this case would necessarily result in greater coordination.[1] Second, this case, unlike the one pending in Pennsylvania, is brought pursuant to California state law. Accordingly, if the case were transferred, plaintiff would not have the benefit of a jury comprised of fellow Californians. In sum, it cannot be said that interests of justice weigh in favor of transfer.

### b. Convenience to the Parties & Witnesses

While defendants may be headquartered in Pennsylvania, their distribution network is expansive, with outlets across both the United States and Canada. Five distributors are located California alone. Given the presence of Lycoming both nationally and in this state, it does not appear that it would be especially inconvenient for defendants to litigate in this district.

Defendants also argue that it would be more convenient for its witnesses to testify in Pennsylvania. The convenience of most of these witnesses is entitled to little weight.[2] As employees of the

---

[1] In fact, it appears that the parties have already agreed that the coordination of discovery, "in the Bristow action with the Pennsylvania cases . . . is in the best interests of everyone." Craven Decl., ¶ 8, Ex. F (March 15, 2007 email). This agreement was made independent of any motions to transfer.

[2] Furthermore, the convenience of defendants' witnesses who neither reside in Pennsylvania or California (many are located in Texas) is not entitled to any weight. The court does not consider the convenience of parties and witnesses who are located outside both the current and transferee fora. See, e.g., Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 484-85 (D. N.J. 1993) (finding that plaintiff, a Japanese corporation, was "already inconvenienced by having to travel thousands of miles from their

party seeking transfer, defendants' will be able to compel their testimony at trial. See, e.g., Ashmore v. N.E. Petroleum Div. of Cargill, Inc., 925 F. Supp. 36, 38 (D. Me. 1996) ("a defendant's motion to transfer under section 1404(a) may be denied when the witnesses are employees of the defendant and their presence may be obtained by the party").

### c. Plaintiff's Choice of Forum

Furthermore, it is well-established that a plaintiff's choice of forum is generally accorded great weight in deciding a motion to transfer. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). Defendants must make a strong showing of inconvenience to warrant upsetting plaintiff's choice of forum. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). Here, plaintiff alleges that defendants violated two of California's consumer protection laws, the UCL and the CLRA. Plaintiff has a strong interest in litigating this case involving California law in a California court, and defendant has not demonstrated sufficient reason to upset that choice.

Accordingly, defendants' motion to transfer is denied.

**B. Motion to Dismiss**

**1. Standards**

**a. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

It is well established that the party seeking to invoke the

---

homes to testify" and traveling to Minnesota would be no more inconvenient than to New Jersey despite fewer flights and lack of a non-stop flight to Minnesota).

9

1  jurisdiction of the federal court has the burden of establishing
2  that jurisdiction exists. KVOS, Inc. v. Associated Press, 299 U.S.
3  269, 278 (1936); Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.
4  1986). On a motion to dismiss pursuant to Federal Rule of Civil
5  Procedure 12(b)(1), the standards that must be applied vary
6  according to the nature of the jurisdictional challenge.

7  If the challenge to jurisdiction is a facial attack, i.e., the
8  defendant contends that the allegations of jurisdiction contained
9  in the complaint are insufficient on their face to demonstrate the
10 existence of jurisdiction, the plaintiff is entitled to safeguards
11 similar to those applicable when a Rule 12(b)(6) motion is made.
12 The factual allegations of the complaint are presumed to be true,
13 and the motion is granted only if the plaintiff fails to allege an
14 element necessary for subject matter jurisdiction. See 2A J.
15 Moore, J. Lucas & G. Grotheer, Moore's Federal Practice, ¶ 12.07
16 (2d ed. 1987); see also Eaton v. Dorchester Development, Inc., 692
17 F.2d 727, 731 (11th Cir. 1982); Williamson v. Tucker, 645 F.2d 404,
18 412 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981); Mortensen
19 v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).
20 A complaint will be dismissed for lack of subject matter
21 jurisdiction (1) if the case does not "arise under" any federal law
22 or the United States Constitution, (2) if there is no case or
23 controversy within the meaning of that constitutional term, or (3)
24 if the cause is not one described by any jurisdictional statute.
25 Baker v. Carr, 369 U.S. 186, 198 (1962).
26 If the challenge to jurisdiction is made as a "speaking

motion" attacking the truth of the jurisdictional facts alleged by the plaintiff, a different set of standards must be applied. Thornhill Pub. Co., Inc. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Where the jurisdictional issue is separable from the merits of the case, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983); Thornhill, 594 F.2d at 733. "In such circumstances '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" Augustine, 704 F.2d at 1077 (quoting Thornhill, 594 F.2d at 733).

> However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.

Augustine, 704 F.2d at 1077 (citing Thornhill, 594 F.2d at 733-35; 5 C. Wright & A. Miller, Federal Practice & Procedure § 1350, at 558 (1969 & Supp. 1987)). On a motion going to the merits, the court must, of course, employ the standard applicable to a motion for summary judgment. Farr v. United States, 990 F.2d 451, 454 n. 1 (9th Cir. 1993), cert. denied, 510 U.S. 1023 (1993).

### b. Motion to Dismiss for Failure to State a Claim

On a motion to dismiss, the allegations of the complaint must

11

be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

////

////

////

**2. Analysis**

    **a. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

        **i. Injury in Fact**

First, defendants argue that plaintiff has suffered no injury and therefore lacks standing. In order to demonstrate standing, Article III requires plaintiffs to demonstrate an "injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Here, with regard to defendants' facial attack, there is nothing speculative about the injury that class members allegedly have suffered or will suffer.[3]

Class members must elect one of three choices. First, they can obey MSB 569A and replace their crankshafts at overhaul for "free" before 2009 at Lycoming -- but bear the extra cost of a Lycoming overhaul (as compared to overhauls performed by other FAA authorized facilities), higher freight charges, and longer downtime, FAC ¶¶ 18-21 -- or overhaul their engines at a local/preferred FAA facility to the tune of $2,000 for replacement parts. Second, class members can wait until after 2009 to replace their crankshafts at overhaul and pay $16,000 for parts. Third, class members can replace the crankshaft in advance of overhaul and pay the costs to remove and reinstall the engine. Under any choice, plaintiffs will assuredly suffer harm.

---

[3] The issue of ripeness is separately addressed below.

13

Furthermore, plaintiffs have alleged that defendants engaged in deceptive business practices, including the failure the disclosure material facts. FAC ¶¶ 48-58. This omission allegedly concerned "facts that a reasonable consumer would have considered important in deciding whether or not to purchase or lease the aircraft." FAC ¶ 52. If true, the injury caused by that omission occurred at the moment of the purchasing or leasing decision (and likely accrued upon discovery of the omission).

Finally, plaintiffs have alleged that as soon as MSB 569A was released, class members' planes suffered a diminution in value.[4] FAC ¶ 23. That diminution in value was an immediately cognizable injury, and there is no principled basis for finding that an injury is not cognizable until plaintiffs are poised to liquidate their assets. Taken to its logical conclusion, defendants' argument would mean that an automobile owner whose vehicle was hit by someone else could not recover for that loss until the owner was prepared to sell the vehicle.

### ii. Ripeness

Alternately, defendants contend under their factual attack that plaintiffs' claims are unripe for review. Defendants argue that because plaintiffs may elect to have an overhaul performed by Lycoming and thereby avoid the cost of a replacement crankshaft, they will be able to avoid injury. The problem with this argument,

---

[4] Accordingly, even if plaintiffs sold their planes prior to an engine overhaul -- thereby avoiding the costs associated with such an endeavor -- the diminution in resale value would still confer standing on plaintiffs.

14

as noted above, is that even opting for a Lycoming overhaul will entail extra cost for plaintiffs. Indeed, under any of the three options available to class members, injury in some form is certain.[5] Furthermore, the injuries related to diminution in market value and defendants' allegedly deceptive business practices have already occurred.

### b. Motion to Dismiss for Failure to State a Claim

Next, defendants also move to dismiss for failure to state a claim, arguing that (1) the UCL causes of action have not been sufficiently pled, (2) plaintiff is not a "consumer" under the CLRA, and (3) Textron is not a proper party to the suit.

### a. UCL

First, defendants argue that plaintiff has failed to allege "actual injury" under the UCL claim. I cannot agree. The complaint specifically alleges that "[p]laintiff, like all California Class members, has been damaged by Defendants' uniform misconduct in that he has or will incur the cost of replacing the Lycoming Crankshaft." FAC ¶ 33. Furthermore, the complaint alleges that "[p]laintiff, like all California Class members, has also suffered diminished value of the aircraft, including . . . diminished resale value, as a result of the Lycoming Crankshaft."

---

[5] Defendants' reliance on Poland v. Stewart, 117 F.3d 1094, 1104 (9th Cir. 1997), is not to the contrary. There, the court dismissed for lack of standing an Eighth Amendment challenge by death row inmate to death by lethal gas, because he had not yet elected between lethal gas or lethal injection. Here, by contrast, regardless of which course of action plaintiffs elect, there will be a cognizable injury under state law.

15

FAC ¶ 34. This is sufficient to plead a cause of action under the UCL.

Defendants also maintain that plaintiffs have failed to properly plead proximate causation and reliance. Under the UCL and CLRA, the legally relevant question is framed not in terms of "reliance," which is required in common law fraud, but of materiality. See Massachusetts Mutual Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1288 (2002); Chamberlan v. Ford Motor Co., 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005). Here, as already noted, the complaint states that defendants failed to disclose material information, and that this omission concerned "facts that a reasonable consumer would have considered important in deciding whether or not to purchase or lease the aircraft." FAC ¶ 52. This is sufficient to allege the required element of materiality.

Defendants additionally contend that unjust enrichment is not an available remedy under the UCL. FAC ¶¶ 46, 57 (alleging that "[d]efendants have been unjustly enriched" and demanding restitution and disgorgement). It appears that the disagreement between the parties is one of form, rather than substance. There is no dispute that restitution is permitted under the UCL, see Bank of the West v. Superior Court, 10 Cal. Rptr. 2d 538, 557 (1992), and "Plaintiff seeks nothing more for himself or the Class members than . . . injunctive relief and restitution." Pls.' Opp'n at 15.

**b. CLRA**

Second, defendants contend that plaintiff is not a "consumer"

16

under the CLRA because a consumer is defined as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family or household purposes." Cal. Civ. Code § 1761(d). Defendants argue that, as a matter of law, an aircraft engine cannot be for "personal, family or household purposes." The only case cited for this at least questionable proposition, Cinquegrani v. Waypoint Aviation Servs., 2001 WL 649488, *3 (N.D. Ill. June 8, 2001), arose under the Magnusson-Moss Act, which defines consumer products based on how they are "normally used," rather than the purposes for which they are actually bought.[6] Compare 15 U.S.C. § 2301(1) with Cal. Civ. Code § 1761(d). Plaintiff has sufficiently alleged that he is a consumer under the CLRA, FAC ¶ 67, meaning that he bought and uses his plane primarily for personal, family, or household purposes.

**3. Textron's Liability**

Third, defendants argue that Textron, as a parent corporation of AVCO, is an improper defendant to this action because it did not design, manufacture, service, market, or sell aircraft engines. Plaintiff responds that Textron engineers knew of the problems with the crankshaft, and even recommended various design changes to counteract the problems, but that Lycoming refused to make the recommended changes. FAC ¶ 6. Accordingly, plaintiff alleges that "Textron knew of its subsidiaries' refusal to change and correct the design problems and remained silent respecting the same." Id.

---

[6] Cinquegrani was also vacated by Wayland Aviation Servs. Inc. v. Sandel Avionics, Inc., 469 F.3d 1071 (7th Cir. 2006).

17

Plaintiff has failed to sufficiently allege the basis for Textron's liability. For example, Textron could be held liable on an alter ego theory, but plaintiff has not alleged facts sufficient to warrant disregarding the corporate form. See, e.g., Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1294 (9th Cir. 1997). Similarly, if plaintiff were to allege that Textron did, in fact, design, manufacture, service, market, or sell the engines, liability could attach more directly. But plaintiff has not done so.

Furthermore, the fact that Textron knew of the alleged problems but took no action to prevent its subsidiaries' alleged wrongdoing is not sufficient to create liability, without more. See Joiner v. Ryder System Inc., 966 F. Supp. 1478, 1490 (C.D. Ill. 1996) (noting that every parent corporation has the power to control its subsidiaries' actions but that such control does not by itself create liability). Plaintiff responds that its position is not that Textron is liable merely because it is a parent corporation but that "Textron is liable based on the independent actions of its employees or officers." Pls.' Opp'n at 17. Plaintiff, however, has not answered the threshold question of why those engineers were under a duty to disclose the alleged design defect, or otherwise act to stop it, when the product in question was apparently designed, manufactured, and sold by a separate entity.

////

////

**III. Conclusion**

Accordingly, the court orders as follows:

1. The motion to transfer is DENIED.

2. The motion to dismiss for lack of subject matter jurisdiction is DENIED.

3. The motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part. Plaintiff is granted 20 days to amend the complaint. The parties shall brief the issue and the court will then determine if a hearing is required.

IT IS SO ORDERED.

DATED: April 9, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT