UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD A. BRISTOW, for
himself and a class of
others similarly situated,

NO. CIV. S-06-1947 LKK/GGH

        Plaintiff,

    v.

LYCOMING ENGINES, a                    **O R D E R**
Division of Avco Corporation;
AVCO CORPORATION,

        Defendants.
_____/

      Plaintiff  Richard  Bristow  brings  suit  against  defendants
Lycoming Engines and AVCO Corporation for injuries associated with
an allegedly faulty airplane crankshaft.  Pending before the court
is plaintiff's motion for class certification.  While most of the
requirements  of  class  certification  are  met,  plaintiff's
corporation, rather than plaintiff, holds title to the plane.  The
court resolves the motion upon the parties' papers and after oral
argument.  For the reasons set forth below, the court denies
plaintiff's motion but grants leave to amend to substitute a new

1

plaintiff, who may then pursue the Unfair Competition Law claim. The court denies the motion with respect to the Consumers Legal Remedies Act Subclass.

## I. Facts[1]

**A. General Background**

Plaintiff seeks to recover costs associated with the replacement of an allegedly faulty airplane crankshaft on behalf of himself and other similarly situated California consumers. The defendants in this action are Lycoming Engines and AVCO Corporation.  Lycoming, an operating division within AVCO, is alleged to manufacture the crankshaft.  Plaintiff has brought claims based upon California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750.

A crankshaft is the part of the airplane engine that translates the piston motion into rotation and turns the propeller.  When crankshafts fail, power loss, engine failure, and damage to the airplane result.  First Amended Compl. ("FAC") ¶ 2.  An engine overhaul is required after a specific amount of time.  During an overhaul, the crankcase is separated and specified parts are inspected or replaced.  FAC ¶ 3.  Unlike other parts of the engine, a crankshaft is typically not replaced, and can last the life of the plane with regular

---

[1] The general facts of this case were set forth in the court's April 10, 2007 order, which denied defendants' motion to transfer and motion to dismiss.  For convenience, the court incorporates relevant portions here.

1   maintenance.   FAC ¶ 3.

2        In 2006, Lycoming issued Mandatory Service Bulletin 569 and
3   569A (collectively, "MSB 569A"), which instituted an "early
4   retirement" program for certain Lycoming crankshafts.   Under the
5   program, Lycoming directed aircraft owners to replace their
6   crankshafts the next time the crankcase was split or at the next
7   scheduled overhaul, but not later than February 21, 2009.   FAC ¶
8   4.   Later in 2006, the FAA issued a corresponding Airworthiness
9   Directive ("AD").   71 Fed. Reg. 57412 (Sept. 29, 2006).   The AD
10   differs from MSB 569A in that it extends the maximum compliance
11   time from three to twelve years.   MSBs are not legally binding
12   on aircraft owners but ADs, as mandatory regulations promulgated
13   by the FAA, are.   <u>Crigler v. Cessna Aircraft Co.</u>, 830 F.2d 169,
14   171 (11th Cir. 1987).

15        If owners decide to replace their crankshafts prior to
16   2009, and have their engines overhauled at Lycoming, they will
17   not be charged for the cost of a new crankshaft.   Freight
18   charges, however, are not covered.   If owners opt to have their
19   engines overhauled prior to 2009 at a non-Lycoming facility,
20   they will be charged $2,000 for the crankshaft, which is
21   discounted from the $16,000 retail cost of a new crankshaft.   If
22   owners opt to have their crankshafts replaced after 2009, they
23   will bear the full $16,000 cost.

24   **B. Plaintiff**

25        Plaintiff, Richard Bristow, does not own a plane.   Bristow
26   is, however, the president of Romeo Bravo, Inc., which holds

1 title to a Mooney M20J plane.  Decl. of Richard A. Bristow

2 ("Bristow Decl.") ¶ 3.  Romeo Bravo is not presently a party to

3 this action.

4      Plaintiff claims that he created the corporation, which is

5 named based on his initials ("R.B."), solely to hold title to

6 the plane.  Id. ¶¶ 3-4.  He claims that he did this, like other

7 aircraft owners, in order to protect his privacy against sales

8 people using the FAA registry to solicit business.  Id. ¶ 3.

9 Bristow paid for the plane out of his personal funds.  Id.  He

10 also states that Romeo Bravo does not have any corporate minutes

11 or corporate meetings, and holds no other assets, accounts, or

12 credit cards.[2]  Id.

13      The plane at issue has a Lycoming engine covered by MSB

14 569A.  Id. ¶ 12.  Bristow also uses the plane almost exclusively

15 for personal trips.  Id. ¶ 14.  He intends to replace the

16 crankshaft before the next regularly scheduled engine overhaul

17 (which is recommended at 2000 flying hours).  Id. ¶ 13.

18 Presumably, plaintiff will obtain the $2,000 parts kit from

19 Lycoming.

20 **C. Proposed Classes**

21      In his pending motion, plaintiff seeks to certify two

22

23 _____

24      [2] While these facts might well justify piercing the corporate
form of Romeo Bravo were it a defendant, Bristow cites no authority
that the corporate form may be disregarded in the present context.

25 The plaintiff's desire to have his cake and eat it too is subject
to the usual practical difficulties such conflicting desires

26 usually present.

4

classes: a "UCL Class" and a "CLRA Consumer Subclass."[3]

Specifically, the UCL Class would include:

> All persons and entities residing in California who: (1) before February 21, 2006 purchased an aircraft that is or was subject to Lycoming Mandatory Service Bulletin 569A; (2) either currently own that aircraft or sold that aircraft on or after February 21, 2006.

Pl.'s Mot. at 8.  The CLRA Subclass would include:

> All persons and entities residing in California who: (1) before February 21, 2006 purchased an aircraft which is used primarily for personal, family or household purposes that is or was subject to Lycoming Mandatory Service Bulletin 569A; (2) either currently own that aircraft or sold that aircraft on or after February 21, 2006.

Id.[4]  The proposed class definitions in plaintiff's motion are somewhat narrower than those described in the complaint in that they do not include lessees, and the court resolves the motion based on the narrower class definitions.[5]

## II. Standard

A party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  Zinser v. Accufix Research

---

[3] Plaintiff states that, as a practical matter, the major difference between the two classes is that businesses would be captured by the UCL Class but not the CLRA Consumer Subclass.

[4] Employees, officers, directors, legal representatives, heirs, successors, and assignees of defendants are excluded from both classes.

[5] Defendants argue that this narrowing creates a moving target, but the change from the complaint to the motion is fairly minor, and it resolves the problem of double recovery by both aircraft owners and lessees.  A court may modify the scope of a class prior to judgment.  See, e.g., Dukes v. Wal-Mart, Inc., 474 F.d 1214, 1223-24 (9th Cir. 2007).

Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) allows a class to be certified

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In other words, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

Rule 23(b) provides for three types of class actions.  Fed. R. Civ. P. 23(b).  Here, plaintiff seeks to certify the class under Rule 23(b)(3), which allows for a class to be certified if "the court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

The matters pertinent to the findings include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Id.

The court must conduct a "rigorous analysis" of the moving party's claims to examine whether the requirements are

6

1  satisfied, <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161

2  (1982).  The allegations in the complaint must be taken as true

3  for the purposes of class certification.  <u>Blackie v. Barrack</u>,

4  524 F.2d 891, 901 n.17 (9th Cir. 1975).  The court may not

5  consider whether the party seeking class certification has

6  stated a cause of action or is likely to prevail on the merits.

7  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 178 (1974).

8  Nevertheless, the court is "at liberty to consider evidence

9  which goes to the requirements of Rule 23 even though the

10 evidence may also relate to the underlying merits of the case."

11 Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992)

12 (internal quotation marks omitted).  If the court concludes that

13 the moving party has met its burden of proof, the court has

14 broad discretion to certify the class.  <u>Zinser</u>, 253 F.3d at

15 1186.

16                        **III. Analysis**

17 **A. Rule 23(a)**

18        **1. Numerosity**

19        First, Rule 23(a) allows a class to be certified only if

20 the "the class is so numerous that joinder of all members is

21 impracticable."  Fed. R. Civ. P. 23(a)(1).  It is undisputed

22 that the proposed class satisfies the requirement of numerosity,

23 as it includes at least 215 aircraft owners in California.

24 Decl. of Nicole E. Reyes ¶ 2.  This is sufficient to make

25 joinder impracticable.

26 ////

                                7

## 2. Common Issue of Law or Fact

Second, the commonality requirement is met if "plaintiffs' grievances share a common question of law or of fact." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001).  It is well-established that "all questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Furthermore, "[t]he commonality test is qualitative rather than quantitative -- one significant issue common to the class may be sufficient to warrant certification."  Dukes, 474 F.3d at 1225.

Here, there are several common issues.  For example, plaintiff alleges that (1) Lycoming Crankshafts are unsafe, (2) defendants knew of the unsafe nature of the crankshafts and their substandard testing, but omitted or failed to disclose this despite a duty to do so, (3) the omissions were material,[6] and (4) defendant engaged in conduct prohibited by the UCL. These are clearly common issues of law and fact that will be raised for all members of the class.

---

[6] Defendants argue that if a person acquired his or her aircraft after the crankshaft was replaced, any alleged misrepresentation by Lycoming would be immaterial.  These individuals, however, are excluded from the class because they do not own a plane that is currently "subject to Lycoming Mandatory Service Bulletin 569A."

### 3. **Typicality**

Third, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Hanon, 976 F.2d at 508.  The typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Armstrong, 275 F.3d at 868 (internal quotation marks omitted).  Moreover, the typicality requirement may be satisfied if "all the members of the purported class would be benefitted by the suit plaintiffs seek to bring."  Ellis v. Naval Air Rework Facility, Alameda, Cal., 404 F. Supp. 391, 396 (N.D. Cal. 1975).

Here, the fact that Romeo Bravo rather than plaintiff holds title to the plane is relevant.  The injury to the proposed class materializes in one of two forms: either owners will suffer diminished resale value if they opt to sell their planes prior to replacing the crankshaft, or they will bear the extra costs associated with replacing the crankshaft as part of their compliance with the AD.  Richard Bristow as an individual, however, has no legal right to sell the plane, because only Romeo Bravo or its agent can do so; accordingly, Bristow will

1   suffer no injury in the event the plane is sold.  Likewise, the

2   only entity legally obligated to comply with the AD and pay for

3   the replacement is Romeo Bravo.[7]

4       Plaintiff has not provided a sufficient legal basis for

5   ignoring corporate formalities.  He maintains that he is a

6   "beneficial owner," and cites as support the practice in

7   securities class actions of allowing individuals to sue in their

8   individual capacities, even though the underlying securities are

9   actually held by banks or brokers.  See, e.g., In re Franklin

10  Nat'l Bank Sec. Litig., 574 F.2d 662 (2d Cir. 1978); see also

11  Silber v. Mabon, 957 F.2d 697, 699 (9th Cir. 1992) ("Under

12  common industry practice, most publicly traded stock is held in

13  the 'street name' of brokerage houses for the benefit of their

14  customers.  Only brokerage houses or other 'record owners'

15  appear on official transfer records.").  This is not, however, a

16  securities case, and the need to accommodate the peculiarities

17  of stock ownership is absent here.  Accordingly, the court finds

18  that Bristow has not satisfied the required element of

19  typicality.

20      Plaintiff has indicated that if the court finds that he

21  lacks standing to bring suit, Romeo Bravo could be substituted

22  as a plaintiff.  Doing so would cure the present defects

23

24

25      [7] Although Richard Bristow may have a present intention to pay
    for the repairs from his personal funds, he would be acting as a
26  volunteer for Romeo Bravo.  Accordingly, this intention may change
    in light of the court's present holding.

10

1   associated with the UCL Class.[8]   Nevertheless, it would not cure

2   the defects associated with the CLRA Consumer Subclass.   Under

3   the CLRA, a consumer is defined as "an individual who seeks or

4   acquires, by purchase or lease, any goods or services for

5   personal, family, or household purposes."   Cal. Civ. Code §

6   1761(d).   A corporation, however, cannot seek or acquire a plane

7   for "personal, family, or household purposes," and the language

8   of the statute clearly envisions a person as the "individual"

9   permitted to bring suit.[9]   Cf. Cal. Grocers Ass'n v. Bank of

10  America, 22 Cal. App. 4th 205, 217 (1994) (finding that trade

11  group of grocers was not a consumer of services for "personal,

12  family, or household purposes").

13       Plaintiff relies on Schauer v. Mandarin Gems of Cal., Inc.,

14  125 Cal. App. 4th 949 (2005) for the proposition that the legal

15  owner of a good may not be the appropriate party to sue under

16  the CLRA.   In Schauer, the court found that a woman whose ex-

17

18       [8] Defendants argue that even if Romeo Bravo were substituted
    as a plaintiff, it would not have suffered monetary damages, and
    its claims would therefore be atypical of class members who paid
19  to have their crankshafts replaced.   Although Romeo Bravo may not
    have expended corporate funds to purchase the plane, assuming that
20  Bristow decides not to pay for the repairs out of personal funds,
    Romeo Bravo will spend money in the course of replacing the
21  crankshaft.   Similarly, any decrease in resale value would also be
    felt by Romeo Bravo.
22

23       [9] The plane owned by Romeo Bravo may be used by Richard
    Bristow for "personal purposes" -- and was probably even
24  contemplated for such use at the time of its purchase -- but the
    language of the statute clearly contemplates that the "personal
25  purposes" be held by the purchaser, not merely some future user.
    Otherwise, a corporation who owned aircraft but rented them out for
26  recreational use, for example, would similarly have standing to sue
    under the CLRA.

1  husband had purchased an allegedly overvalued engagement ring

2  could not sue under the CLRA, even though she "owned" the ring

3  as a result of the divorce settlement.  Rather, the court found

4  that the ex-husband "was the consumer because it was he who

5  purchased the ring," whereas "[p]laintiff's ownership of the

6  ring was not acquired as a result of her own consumer

7  transaction with defendant."  Id. at 960.  The difference here,

8  however, is that Richard Bristow is not, and has never been, the

9  legal owner of the plane; rather, the first and only owner of

10  the plane has been Romeo Bravo.

11      Under the circumstances, plaintiff's motion must be denied;

12  nevertheless, the court will grant plaintiff leave to amend the

13  complaint in order to substitute Romeo Bravo or another suitable

14  party for Richard Bristow.[10]  In the interests of judicial

15  economy, the court assumes for the remainder of the order that

16  Romeo Bravo is the actual plaintiff.

17      **4. Adequacy of Representation**

18      The fourth and final Rule 23(a) requirement -- adequacy --

19  requires: (1) that the class representative and class counsel

20

21      [10]  If plaintiff opts to substitute Romeo Bravo, the
requirement of typicality (with respect to the UCL Class) would be
22  satisfied.  Romeo Bravo's injury, like that of the class members,
relates to the replacement of the crankshaft, and this injury arose
23  as a result of the same course of conduct as that experienced by
other class members (i.e., defendants' allegedly unfair business
24  practices).  Furthermore, although individual damages will vary
depending on when and where a class member has the crankshaft
25  replaced, "[t]he amount of damages is invariably an individual
question and does not defeat class action treatment."  Blackie, 524
26  F.2d at 905.

1  not have conflicts of interest with the class and (2) that the

2  class be represented by qualified counsel who will vigorously

3  prosecute the case on behalf of the class.  <u>Hanlon</u>, 150 F.3d at

4  1020.  In appointing class counsel, the court must consider the

5  work counsel has done, counsel's experience in handling class

6  actions, counsel's knowledge of the applicable law, and the

7  resources that counsel will commit to representing the class.

8  Fed. R. Civ. P. 23(g)(1)(C)(i).

9      With respect to the first prong, neither party has alerted

10  the court as to any potential conflict of interest between

11  plaintiff and other class members.[11]  With respect to the second

12  prong, the court finds that, notwithstanding the ownership issue

13  raised above, the law firms representing plaintiff and the class

14  appear competent.  They possess experience handling class

15  actions and other complex litigation, have expended significant

16  effort investigating potential claims and developing legal

17  theories to support those claims, and appear familiar with the

18  applicable laws.  Accordingly, so long as the substituted

19  plaintiff does not possess any conflicts of interest, the court

20  finds that the adequacy of representation requirement to be

21  satisfied.

22  **B. Rule 23(b)**

23      In addition to the requirements set forth in Rule 23(a),

24  _____

25  [11] Presumably, the same would be true even if Romeo Bravo were
    substituted as plaintiff, because any conflict would have already
26  existed due to Richard Bristow's role as the president of the
    corporation.

13

1  plaintiff must also satisfy one of the requirements set forth in

2  Rule 23(b).  Here, plaintiff seeks certification pursuant Rule

3  23(b)(3), which requires that common questions of law or fact

4  "predominate over any question affecting only individual

5  members" and that a class action be "superior to other available

6  methods for the fair and efficient adjudication of the

7  controversy."  Fed. R. Civ. P. 23(b)(3).

8      **1. Predominance of Common Questions of Law or Fact**

9      The predominance requirement "tests whether proposed

10  classes are sufficiently cohesive to warrant adjudication by

11  representation."  Hanlon, 150 F.3d at 1022 (internal quotation

12  marks omitted).  The inquiry "presumes that the existence of

13  common issues of fact or law have been established pursuant to

14  Rule 23(a)(2)."  Id.  Common issues will predominate when they

15  "present a significant aspect of the case and they can be

16  resolved for all members of the class in a single adjudication."

17  Id. (quoting 7A Wright & Miller, Federal Practice & Procedure §

18  1778 (2d ed. 1986)).

19      As discussed above, there are questions of fact and law

20  common to the class.  These include whether the crankshafts are

21  unsafe, whether defendants had a duty to disclose information

22  regarding the allegedly unsafe nature and substandard testing of

23  the crankshafts, whether the information was material, and

24  whether defendant engaged in unfair or unlawful practices.

25  Apart from the issue of individual damages -- which does not

26  defeat class certification -- it is plain that these issues

14

1   present a significant (if not the central) aspect of the case

2   and could be resolved in a single adjudication.

3       Defendant responds that the class is comprised of

4   individuals who own aircraft for disparate purposes (e.g.,

5   personal use, air transport, law enforcement), but, as plaintiff

6   points out, no one -- whether an individual or governmental

7   entity -- wants unsafe crankshafts.  Furthermore, materiality is

8   judged by the effect on a reasonable consumer.  Consumer

9   Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351,

10  1360 (2003).  Accordingly, the court finds that common issues

11  predominate over individual issues.

12      **2. Superiority of Class Action**

13      Rule 23(b)(3) also requires that a class action be

14  "superior to other available methods for the fair and efficient

15  adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

16  The four factors pertinent to the superiority determination

17  include (1) the interest in class members individually

18  controlling the prosecution of separate actions, (2) the extent

19  and nature of ongoing litigation by class members, (3) the

20  desirability or undesirability of concentrating the litigation

21  in the particular forum, and (4) difficulties of managing the

22  class action.  Id.

23          **a. Class members' interest in individually controlling**

24              **the prosecution of separate actions**

25      First, with regard to the interest of class members in

26  individually controlling the prosecution of separate actions,

1  "[w]here damages suffered by each putative class member are not

2  large, this factor weighs in favor of certifying a class

3  action."  Zinser, 253 F.3d at 1190.  Here, the amount in

4  controversy for each class member is likely to be small in

5  relation to the costs associated with litigating a defective

6  products case.  Cf. Hanlon, 150 F.3d at 102 ("In most cases,

7  litigation costs would dwarf potential recovery.").  While there

8  could be some class members who would have an interest in

9  individually controlling the prosecution of an action because

10 they own multiple aircraft subject to MSB 569A, class treatment

11 would still be a superior method of adjudication for the

12 remainder of the class.

13          **b. Litigation already commenced**

14      Second, although there is a case pending in Illinois state

15 court that seeks to represent California aircraft owners, this

16 action is at a more advanced stage.  There do not appear to be

17 any other cases seeking to represent California aircraft owners.

18          **c. Desirability of concentrating litigation in this**

19          **forum**

20      Third, defendants do not dispute the desirability of

21 litigating the action in this forum.  Furthermore, the

22 desirability of determining the California class members' claims

23 in this forum has been previously adjudicated in the context of

24 defendant's motion to transfer.

25 ////

26 ////

1              **d. Likely difficulties in the management of the class**

2              **action**

3        Finally, management of the class action is not likely to

4    raise such difficulties that individual actions would be a

5    superior method of resolving the case.  Plaintiff has provided

6    the court with a proposed notice and trial plan demonstrating

7    the manageability of the class action.  Accordingly, for the

8    foregoing reasons, the court finds that a class action is

9    superior to other available methods for the fair and efficient

10   adjudication of this controversy.

11                        **IV. Conclusion**

12       1.    The court DENIES plaintiff's motion for class

13             certification with respect to the Unfair Competition

14             Law Class, and DENIES the motion with respect to the

15             Consumers Legal Remedies Act Subclass.

16       2.    The court GRANTS plaintiff 30 days to amend the

17             complaint in order to substitute the named class

18             representative.

19       IT IS SO ORDERED.

20       DATED:  June 14, 2007.

21

22

23                          LAWRENCE K. KARLTON
                            SENIOR JUDGE
24                          UNITED STATES DISTRICT COURT

25

26