UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD A. BRISTOW, for
himself and a class of
others similarly situated,

                             NO. CIV. S-06-1947 LKK/GGH

      Plaintiff,

  v.

LYCOMING ENGINES, a                    **O R D E R**
Division of Avco Corporation;
AVCO CORPORATION,

      Defendants.
_____/

    The defendants manufacture aircraft engines and the plaintiff class includes persons who owned an aircraft subject to a recall of certain crankshafts in the defendants' engines. The plaintiffs allege defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., and the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.

    There are four motions pending before the court. The plaintiffs move for summary judgment and for approval of class

1

notice. Defendants move for summary judgment or, in the alternative, to decertify the class. The defendants move to exclude plaintiff's experts. The court resolves the motions on the papers and after oral argument.

## I. FACTS AND BACKGROUND[1]

Defendant Lycoming Engines, a division of defendant Avco Corporation, manufactures aircraft engines. Beginning in 2000, Lycoming experienced an increase in failures of engine crankshafts, causing them to issue a series of service bulletins. Among these was Service Bulletin 569 and 569A, issued on February 19, 2006 and April 11, 2006, respectively, which imposed a "retirement," or recall, of the problematic crankshafts. Service Bulletin 569A required the faulty crankshafts be replaced at the "first crankcase separation or at the next [engine] overhaul," but not later than February 21, 2009.

On September 29, 2006, the Federal Aviation Administration ("FAA") issued an Airworthiness Directive ("AD") designated AD 2006-20-09. It required that the faulty crankshafts be replaced but permitted a compliance date of twelve years from the date the crankshaft was installed or until the next engine overhaul. The FAA estimated that no additional cost would be incurred by the crankshaft replacement, as it could be performed at the time of a routine engine overhaul or maintenance. Lycoming agreed to replace

---

[1] The court described the plaintiff's allegations in detail in its April 10, 2007 and June 15, 2007 orders. The facts stated herein are undisputed unless otherwise noted.

2

the crankshafts at their factory at no cost to the aircraft owners if the replacement occurs during the twelve-year period; this obligation is included in AD 2006-20-09.

The plaintiffs' complaint was filed in this court in August 2006. The amended complaint alleges causes of action under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., and California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq.

In April 2007, the court denied defendants' motion to dismiss for lack of subject matter jurisdiction, holding that the plaintiffs had standing because they had sufficiently alleged they had suffered or will suffer harm as a result of the defendants' allegedly unlawful conduct. The court explained,

> Class members must elect one of three choices. First, they can obey MSB 569A and replace their crankshafts at overhaul for "free" before 2009 at Lycoming -- but bear the extra cost of a Lycoming overhaul (as compared to overhauls performed by other FAA authorized facilities), higher freight charges, and longer downtime, FAC ¶¶ 18-21 -- or overhaul their engines at a local/preferred FAA facility to the tune of $2,000 for replacement parts. Second, class members can wait until after 2009 to replace their crankshafts at overhaul and pay $16,000 for parts. Third, class members can replace the crankshaft in advance of overhaul and pay the cost to remove and reinstall the engine. Under any choice, plaintiffs will assuredly suffer harm.

Order, April 7, 2007, at 13. The court granted the defendants' motion to dismiss in part, holding that the plaintiffs' allegations against defendant Textron were inadequately pled.

On September 11, 2007, the court certified the plaintiff class to include "all persons or entities residing in California who: (1) before February 21, 2006 purchased an aircraft that is or was

3

subject to Lycoming Mandatory Service Bulletin 569A; (2) either currently own that aircraft or sold that aircraft on or after February 21, 2006." The court also certified a subclass under the CLRA that includes "all persons residing in California who: (1) before February 21, 2006 purchased an aircraft which is used primarily for personal, family or household purposes that is or was subject to Lycoming Mandatory Service Bulletin 569A; (2) either currently own that aircraft or sold that aircraft on or after February 21, 2006."[2]

## II. STANDARDS

**A. SUMMARY JUDGMENT STANDARDS UNDER FEDERAL RULE OF CIVIL PROCEDURE 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here

---

[2] As the court explained in its June 15, 2007 order, the class includes those businesses which are not a part of the subclass.

4

the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,

5

in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir. 1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see also Cline v. Indus. Maint. Eng'q & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752

6

1 F.2d 1401, 1405 (9th Cir. 1985).

2     In resolving the summary judgment motion, the court
3 examines the pleadings, depositions, answers to interrogatories,
4 and admissions on file, together with the affidavits, if any.
5 Rule 56(c); see also In re Citric Acid Litigation, 191 F.3d
6 1090, 1093 (9th Cir. 1999).  The evidence of the opposing party
7 is to be believed, see Anderson, 477 U.S. at 255, and all
8 reasonable inferences that may be drawn from the facts placed
9 before the court must be drawn in favor of the opposing party,
10 see Matsushita, 475 U.S. at 587 (citing United States v.
11 Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); See also
12 Headwaters Forest Def. v. County of Humboldt, 211 F.3d 1121,
13 1132 (9th Cir. 2000).  Nevertheless, inferences are not drawn
14 out of the air, and it is the opposing party's obligation to
15 produce a factual predicate from which the inference may be
16 drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp.
17 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th
18 Cir. 1987).

19     Finally, to demonstrate a genuine issue, the opposing party
20 "must do more than simply show that there is some metaphysical
21 doubt as to the material facts. . . . Where the record taken as
22 a whole could not lead a rational trier of fact to find for the
23 nonmoving party, there is no 'genuine issue for trial.'"
24 Matsushita, 475 U.S. at 587 (citation omitted).
25 ////
26 ////

**III. ANALYSIS**

**A.   Defendants' Motion for Summary Judgment or Decertification**

The defendants move for summary judgment or, alternatively, class decertification on the grounds that the plaintiffs cannot meet their burden of proving that the crankshafts at issue caused a diminution in the value of the plaintiffs' aircrafts. The plaintiffs in their opposition concede that they are no longer seeking damages for diminution in aircrafts' value, but that they seek recovery for restitution and other damages.[3] The defendants argue that there are no other damages to which the plaintiffs have shown they are entitled. They contend that the plaintiffs are either not entitled to certain damages they seek or that they are unable to prove these damages. The court

---

[3] In the plaintiffs' Second Amended Complaint, the plaintiffs stated that they sought injunctive relief and monetary damages "including but not limited to compensatory, incidental, consequential, and punitive damages." Therefore, although the plaintiffs now no longer seek damages to represent the alleged diminution in value of their aircraft, this does not constitute an amendment of the complaint, and does not unfairly prejudice the defendants. See Eagle v. American Telephone & Telegraph, Co., 769 F.2d 541, 548 (9th Cir. 1985)(Rule 16 amendment improper to permit the addition of a new damages theory, where the plaintiff had proposed the theory in his summary judgment motion). The relief that the plaintiffs seek is permitted by law, as both the UCL and CLRA permit an award of restitution damages and issuance of an injunction for successful plaintiffs. Cal. Civ. Code § 1780(a)(recovery for restitution damages under CLRA); Cal. Bus. & Prof. Code § 17203 (same, under UCL); Cal. Civ. Code § 1780(a)(2)(injunctive relief under CLRA); Cal. Bus. & Prof. Code § 17203 (same, under UCL); see also Cal. Civ. Code § 1780(a)(1)(CLRA permits recovery for "actual damages" suffered by plaintiff); id. § 1780(a)(5)(court permitted to award any relief it "deems proper," under CLRA).

8

considers each of the alleged damages in turn.[4]

### 1.   Cost of Replacing the Crankshaft

The plaintiffs present evidence that the defendants will provide replacement crankshafts for $2000 until February 21, 2009. Declaration of Erica Craven In Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment or, In the Alternative, to Decertify the Class ("Craven Decl.") ¶ 5, Ex. D (FAA Airworthiness Directive, at 6). After that, the replacement part will cost approximately $16,000. Id. The defendants counter that, if an aircraft owner receives an engine overhaul at the Lycoming factory within twelve years, the defective crankshaft will be replaced at no cost.  Whether an engine overhaul is recommended or required within twelve years varies depending on whether the aircraft is for private use or not.  Declaration of Richard Moffett In Support of Defendants' Motion for Summary Judgment or, In the Alternative, to Decertify the Class ("Moffett Decl.") ¶ 13.

### 2.   Additional Costs if the Crankshaft Replacement Does Not Occur at the Lycoming Factory

If an aircraft owner has the crankshaft replaced at a place

---

[4] The plaintiffs also claim that the court could simply order injunctive relief, requiring the defendants to pay all costs associated with the faulty crankshafts. This approach has two main flaws. First, it does not address the issue of whether the plaintiffs have shown they in fact suffered harm, which is necessary for recovery under both the UCL and CLRA. Cal. Bus. & Prof. Code § 17204; Cal Civ. Code § 1780. Second, the class was certified under Federal Rule of Civil Procedure 23(b)(3). If injunctive relief is the remedy now sought, it is inconsistent with that Rule's opt-out right.

9

other than the factory, the plaintiffs contend that the owner will be required to pay for the replacement part ($2000 or $16,000, depending on when the replacement occurs), labor costs, removal and installation costs, and time for loss of use of the aircraft. The defendants argue that all costs except the cost of the replacement part are not "damages," as they would have been incurred by the aircraft owners during the routine overhaul of the engine. If the aircraft owner has the crankshaft replaced in advance of routine maintenance, the defendants assert that it would be improper to impose this cost on the defendants. The court agrees.

The FAA Airworthiness Directive concluded that the defective crankshafts "must" be replaced "at the earliest of maintenance involving crankcase separation, the time-in-service specified by Lycoming Engines . . . for engine overhaul, or twelve years from the time the crankshaft first entered service." Moffett Decl. ¶ 9, Ex. 3. Lycoming recommends engine overhaul occur at least every two thousand miles, or twelve years. Declaration of Ronald Mangon In Opposition to Defendants' Motion to Dismiss ("Mangon Decl. (Motion to Dismiss)") ¶ 6, Ex. A at 1. Accordingly, the defective crankshaft would not need to be replaced, per the FAA's Airworthiness Directive, any earlier than an overhaul would regularly occur. It follows that if an aircraft owner replaces the crankshaft sooner than the FAA requires, this is not a damage a jury could reasonably conclude was caused by Lycoming's actions.

10

In sum, if the crankshaft replacement occurs at a location other than the Lycoming factory, the only damages to which a plaintiff would arguably be subjected are the costs of the replacement part. The question of whether such costs may be pursued in a class suit will be discussed later. I first turn to the alternative repair process.

### 3. Costs if the Crankshaft Replacement Occurs At the Lycoming Factory

Although the defendants will pay for the cost of the replacement part if an aircraft owner has the replacement performed at the Lycoming factory, the plaintiffs contend that this option necessarily includes costs to the aircraft owner, which he is entitled to recover.

#### a. Cost of Overhaul at Lycoming Compared to Other Repair Stations

First, the plaintiffs argue that Lycoming charges more for their factory overhauls than other mechanics charge, so a class member who chose to have the overhaul performed by Lycoming in order to receive free replacement parts would suffer damages nonetheless. The plaintiffs base this assertion in part on the testimony of Ronald Mangon, in the form of his declarations in support of the plaintiffs' motion for class certification and in opposition to the defendants' motion to dismiss. Defendants object to the plaintiffs' reliance on these declarations, as they contain opinions not subsequently included in Mr. Mangon's expert report. See Fed. R. Civ. P. 26(a)(2). This objection appears to be not well taken, as Mr. Mangon's statements

11

1  regarding the cost of engine overhauls were not made pursuant to
2  his status as an expert, but rather as a percipient witness
3  conveying information he obtained on overhaul costs.
4      These statements are inadmissable, however, as hearsay.[5] In
5  the declarations on which the plaintiffs rely, Mr. Mangon
6  described what airplane engine repair stations informed him
7  would be the costs of engine overhauls and crankshaft
8  replacements. Declaration of Ronald Mangon in Support of Class
9  Certification ¶ 10; Mangon Decl. (Motion to Dismiss) ¶¶ 8-9.
10 Clearly, these are out-of-court statements offered for the truth
11 of what they assert and, as such, inadmissable hearsay. Fed. R.
12 Evid. 801. The plaintiffs have not shown that any applicable
13 hearsay exception applies.
14     Aside from the declaration of Mr. Mangon, the plaintiffs
15 present no additional evidence that a regularly-scheduled
16 overhaul is more expensive at the Lycoming factory than if
17 performed by another mechanic.[6]

---

[5] The defendants raise this objection in their reply brief. Defendants' Reply in Support of Motion for Summary Judgment or, In the Alternative, To Certify the Class, at 5 n. 5. While raising new issues in a reply brief is ordinarily improper, Nevada v. Watkins, 914 F.2d 1545, 1560 (9th Cir. 1990), obviously that does not apply to issues raised by evidence tendered for the first time in the opposition brief.

[6] The plaintiffs also have presented two invoices, one accompanied by a declaration by one of the representative class members, of the cost of a crankshaft replacement at non-Lycoming shops. Plaintiffs' Statement of Disputed Facts ¶ 8. Leaving aside the question of whether one of the invoices is admissible, see Craven. Decl. ¶ 13, Ex. L, these invoices only are offered to establish the cost of crankshaft replacement in advance of an engine overhaul. As explained *supra*, this does not serve to

### b. Cost for Removal and Installation of the Engine and Shipping Costs

The plaintiffs argue that aircraft owners who have the crankshafts replaced at the Lycoming factory will incur a charge for removal and installation of the engine. To substantiate this argument, the plaintiffs produce two documents that purport to be admissions by Lycoming of this cost. See Craven Decl. ¶¶ 8-9, Ex. G, H. Assuming these documents are properly authenticated at trial, see Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006), they are admissible and serve as grounds for this aspect of the plaintiffs' claim for damages.

The plaintiffs also present evidence in the form of Mr. Mangon's declaration that shipping costs to the Lycoming factory are approximately $800-$1,000. Mangon Decl. (Motion to Dismiss) ¶ 2. Assuming the proper foundation for this opinion is developed at trial, Burch, 433 F. Supp. 2d at 1122, it is admissible and may substantiate this claim for damages.

### c. Loss of Use

Third, the plaintiffs argue that they are entitled to damages for the loss of use of their aircraft while it is repaired at the Lycoming factory. The plaintiffs observe that with prior Service Bulletins, Lycoming had paid for these costs

---

establish that the plaintiffs suffered damages from the defendants' allegedly illegal acts.

Plaintiffs have presented no evidence in the form of "expert analyses and formulas . . . to determine the average or regional costs of replacement," as they indicated they would in their motion for class certification. See Plaintiffs' Motion In Support of Class Certification, at 20.

13

and that "plaintiffs in this case should receive the same treatment." Opposition to Defendants' Motion for Summary Judgment or, In the Alternative, to Decertify the Class, at 8. The plaintiffs state that at trial they "may submit a summary exhibit that averages the loss of use payments that Lycoming paid to Californians per plane under" those service bulletins. Craven Decl. ¶ 15.

This does not suffice to show that the plaintiffs would actually suffer loss of use damages as a result of the defendants' conduct. As explained above, the FAA has determined that the crankshafts at issue need not be replaced earlier than when routine engine maintenance would occur. The plaintiffs have not shown that they would experience a loss of use of their aircraft beyond that which they would experience in any event due to routine maintenance. The evidence regarding Lycoming's past practices on other service bulletins does not resolve this question.

**4. Plaintiffs' Possible Award of Damages**

In sum, the plaintiffs have adduced evidence that: (1) some plaintiffs may pay the cost of the replacement crankshaft (if the replacement is not performed at the Lycoming factory), and (2) if some plaintiffs have their engines repaired by Lycoming, they will incur costs for shipping, removal and installation. Therefore, despite defendants' argument otherwise, the plaintiffs have adduced admissible evidence to show that at least some of the class members were harmed by defendants'

conduct. Summary judgment is thus inappropriate on this ground.

The plaintiffs' plan to show class-wide damages at trial, however, raises serious question. In their trial plan, on which the court relied in granting class certification, the plaintiffs stated that its damages under the UCL and CLRA would be proven based on "an aggregate amount by a formula." Plaintiffs' Proposed Notice and Trial Plan, at 3. The plaintiffs have not directed the court to any evidence, expert or otherwise, indicating how the damage award would be calculated or what "formula" would be employed. The plaintiffs encourage the court to shift the burden to the defendants to make the showing of individualized damages, but can cite no precedent warranting such a scheme nor was it proposed in the plaintiffs' trial plan.[7] The plaintiffs cannot shirk their evidentiary duty simply on the grounds that it is burdensome to meet.

Moreover, the plaintiff's plan would not appear to show *class-wide* damages. For instance, to show that an overhaul at Lycoming would result in shipping costs, the plaintiffs only have evidence in the form of Mr. Mangon's vague estimate that this amount would be between $800-$1000. Mangon Decl. (Motion to

---

[7] Plaintiffs cite <u>Kraus v. Trinity Mgmt. Servs.</u>, 23 Cal. 4th 116 (2000), as support for this approach. <u>Kraus</u> is distinguishable, however, because there the defendants were ordered only to disgorge ill-gotten security deposits from tenants. The calculation of the recovery was straightforward and wholly within the knowledge of the defendants. <u>Id.</u> Here, the plaintiffs seek damages whose value the defendants would have no reason to know (i.e., the cost of crankshaft replacement by mechanics other than the Lycoming factory and shipping costs).

15

Dismiss) ¶ 2. Common sense suggests, however, that the shipping cost in fact differs depending on from what location the engine is sent. The plaintiffs have not presented evidence of what the individual damages in the form of shipping costs would be and then how this should be aggregated to reflect class-wide damages.[8]

Finally, the plaintiffs have not presented evidence to show that the class is not overinclusive. Specifically, the plaintiffs have not shown that they have evidence that aircraft owners who send their engines to the Lycoming factory for overhaul would not have had Lycoming perform the routine engine maintenance anyhow. For this group of individuals, the plaintiffs have no evidence of damages. If a proposed class member has not in fact suffered damages, class certification is improper under the UCL and CLRA. See Caro v. Proctor & Gamble, Co., 18 Cal. App. 4th 644, 669 (1993); Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th 746, 756 (2003); see also Abuan v. General Electric, Co., 3 F.3d 329, 333-34 (9th Cir.

---

[8] Similarly, even if the evidence of comparative cost of overhauls at Lycoming and non-Lycoming shops is admitted, see Mangon Decl. (Motion to Dismiss) ¶¶ 8-9 Ex. D-E, the plaintiffs present no evidence or give any indication of how these costs are borne by the class in its entirety.

Moreover, both the pieces of evidence on which the plaintiffs rely, Mangon Decl. (Motion to Dismiss) ¶¶ 8-9 Ex. D-E, describe the costs of engine overhauls at a shop in Oklahoma and in Florida, respectively. Plaintiffs' evidence of shipping cost damages, however, appears to presume that the class members would have had the overhauls performed in California; they do not address the question of what damages for shipping costs would be available to those plaintiffs who would send their engines out of state for their overhauls regardless of the defendants' conduct.

16

1993)(summary judgment proper where plaintiffs had not shown individual causation and damages for the members of the plaintiff class).

    For these reasons, the court no longer can find that class certification on the issue of damages is appropriate. Simply, the evidence appears to show that damages will be individualized across the class and the plaintiffs have not offered a compelling mechanism or formula for aggregating the damages. By virtue thereof, the plaintiff class and subclass must be decertified.

    By virtue thereof, it appears to the court that the remaining issues are moot.  If the plaintiffs wish to pursue relief for the named plaintiffs only, they should so indicate within 15 days and the court will then take up the remaining issues.

## V. CONCLUSION

    For the reasons stated herein, the court ORDERS as follows:

1.   The defendants' motion to decertify the class is
     GRANTED.

IT IS SO ORDERED.

DATED:  March 28, 2008.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT